UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED PET GROUP, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 4:13CV01053 AGF |
| SERGIY MOGYLEVETS, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

The matter is before the Court on the motion (Doc. No. 18) of Plaintiff United Pet Group, Inc. for default judgment. Plaintiff, a pet product manufacturer, brings this action alleging federal trademark counterfeiting and infringement (Count I), federal unfair competition and false designation of origin (Count II), common law trademark infringement and unfair competition (Count III), and unfair competition under Mo. Rev. Stat. § 407.020 (Count IV).

Plaintiff alleges that Defendant Sergiy Mogylevets, an individual, unlawfully distributed and sold counterfeit products and/or packaging using Plaintiff's trademarks on various websites. Upon consideration of the motion and the applicable law, the Court will enter default judgment against Defendant on Plaintiff's complaint.

Plaintiff filed suit on June 3, 2013, alleging that an unspecified number of John Doe Defendants unlawfully sold counterfeit products and/or packaging using Plaintiff's trademarks and logos on various websites, including Amazon.com. (Doc. No. 1.)

Plaintiff also filed a motion for leave to take expedited discovery pursuant to Federal Rule of Civil Procedure 26(d)(1) to attempt to identify the John Doe Defendants' identities by serving Rule 45 subpoenas on Amazon.com. (Doc. No. 3.) On August 20, 2013, the Court granted Plaintiff's motion. (Doc. No. 6.) On January 15, 2014, after expiration of the time for completion of expedited discovery during which the Plaintiff did not identify or serve a named party in place of John Doe, the Court, on its own motion, entered an Order to Show Cause why the matter should not be dismissed for failure to prosecute. (Doc. No. 7.) In response to that Order, Plaintiff filed a motion for leave to file a first amended complaint identifying a John Doe Defendant as Sergiy Mogylevets, and the Court granted Plaintiff leave to file its first amended complaint. (Docs. No. 8 & 11.) On January 22, 2014, Plaintiff filed its first amended complaint naming Sergiy Mogylevets as the sole defendant. (Doc. No. 12.)

Plaintiff served Defendant Sergiy Mogylevets with the summons and complaint on January 27, 2014. (Doc. No. 14.) Defendant has not filed an answer or other responsive pleading. On Plaintiff's motion, the Clerk of Court entered default against Defendant on February 24, 2014. (Doc. No. 17.) On May 1, 2014, Plaintiff filed the instant motion for default judgment, seeking a permanent injunction and statutory damages under 15 U.S.C. § 1117(c) in the amount of $6,000,000. (Doc. No. 18.)

**Facts**

Plaintiff designs, manufactures, markets, advertises, distributes, and sells in interstate commerce various pet products, including FURminator DeShedding Tools.

Plaintiff began using the FURMINATOR trademark in connection with its grooming tools as early as 2002. Plaintiff has three federally registered trademarks in the FURminator name and/or "Paw" logo ("FURminator marks"), and has advertised and promoted its grooming tools sold under the FURminator marks throughout the United States.

In 2013, Plaintiff purchased products bearing the FURminator marks from Amazon.com from eight seller accounts. The accounts are each associated with e-mails ending in ".amazon@gmail.com," and share the same names as certain LLCs for which Defendant is listed as the manager and registered agent. All of the seller accounts link to Defendant's address. Plaintiff determined that the products purchased from Amazon.com were counterfeit products. Plaintiff alleges that Defendant sold goods bearing the FURminator marks on Amazon.com; the products sold by Defendant are counterfeit; Defendant purchased the counterfeit products from a source not authorized or licensed by Plaintiff to manufacture, offer for sale, or sell products bearing the FURminator marks; Plaintiff did not manufacture, inspect, or package the counterfeit products prior to the unauthorized sale and did not approve the counterfeit products for sale or distribution; and Defendant is not authorized by Plaintiff to manufacture, advertise, distribute, export, import, ship, sell, offer to sell, or facilitate the sale of any products bearing the FURminator marks that are not authentic products. Plaintiff alleges that Defendant's use of the FURminator marks caused, and is likely to cause in the future, confusion among potential customers who will be deceived into believing that Defendant's counterfeit

products are authentic products, thus harming the consuming public and irreparably harming Plaintiff's reputation and goodwill. Finally, Plaintiff alleges that Defendant's actions were willful.

**Standard for Default Judgment**

Where default has been entered, the allegations of the complaint are taken as true, except as to the amount of damages. *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). It then "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

**Discussion**

Plaintiff's federal trademark counterfeiting and infringement (Count I) and unfair competition and false designation of origin (Count II) claims both require Plaintiff to demonstrate that (1) it owns a valid and legally protectable mark, and (2) there is a likelihood of confusion between its mark and Defendant's mark. *See B&B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 389 (8th Cir. 2009); *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011).

Registration of a trademark is "prima facie evidence of a registrant's exclusive right to use the registered mark in commerce." *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 883 (8th Cir. 2014) (quoting 15 U.S.C. § 1115(a)). Under the Lanham Act, "[a] 'counterfeit' is a spurious mark which is identical with, or substantially

4

indistinguishable from, a registered mark." 15 U.S.C. § 1127. "It may be presumed that counterfeiting another's mark creates a likelihood of confusion." *George & Co., LLC v. Xavier Enters., Inc.*, No. 09-2973 (DWF/RLE), 2009 U.S. Dist. LEXIS 112902, at *12 (D. Minn. Dec. 4, 2009); *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004). Defendant has failed to respond in this case to rebut these presumptions. Accordingly, the Court will enter judgment on Counts I and II.

The "same facts which support a suit for trademark infringement support a suit for unfair competition and common law infringement" under Missouri law. *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1010; *see also* Mo. Rev. Stat. § 417.061. In its motion for default judgment, Plaintiff mentions the common law trademark infringement and Missouri unfair competition claims in Counts III and IV but makes no specific request for damages under either of these counts. Thus, the Court will enter judgment under these counts, but the Court awards no additional damages under Counts III or IV.

**Permanent Injunction**

The Lanham Act permits courts to enter permanent injunctive relief to prevent future trademark infringement. 15 U.S.C. § 1116. "To obtain a permanent injunction, [Plaintiff is] required to show: (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest." *Cmty. of Christ Copyright Corp.*, 634 F.3d at 1012. "[I]n trademark law, injury is presumed once a likelihood of confusion has been established." *Id.* Moreover, the public interest is served in preserving intellectual

5

property rights. *West Coast Prods. v. Garrett*, No. 4:12CV01551 AGF, 2014 U.S. Dist. LEXIS 23236, at *11 (E.D. Mo. Feb. 25, 2014).

The Court concludes, particularly in light of Defendant's failure to respond, that Plaintiff has demonstrated a likelihood of success on the merits of its claims; that Defendant's infringement has irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff; the harm to Plaintiff from the infringement outweighs any potential harm to Defendant from enjoining Defendant's infringing activities; and the public interest in preserving intellectual property rights will be served by an injunction. Therefore, Plaintiff has established its right to a permanent injunction.

**Damages**

Plaintiff does not seek actual damages, alleging only its right to statutory damages under the Lanham Act, 15 U.S.C. § 1117(c), which provides that in cases "involving the use of a counterfeit mark," the plaintiff may elect statutory damages in the amount of "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." The statute does not provide guidelines for determining an appropriate award other than the limitation that the award be what the "court considers just." *Coach, Inc. v. City Gear, LLC*, No. 4:11CV1677 CDP, 2012 U.S. Dist. LEXIS 7341, at *2 (E.D. Mo. Jan. 23, 2012). However, courts have considered the following

6

factors in fashioning an award: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Id.* at *2-3.

Plaintiff has requested $6,000,000, representing the maximum statutory damages of $2,000,000 per counterfeit mark, because Plaintiff alleges that it has identified several different types of goods sold by Defendant bearing at least three of Plaintiff's trademarks. Plaintiff argues that enhanced damages are appropriate here because Defendant acted willfully. Considering the factors noted above, and in light of the fact that Defendant's failure to respond gives the Court no information regarding Defendant's sales and profits, or revenues lost by the Plaintiff, the Court concludes that an award of $150,000, representing $50,000 per counterfeit mark, is just. *See, e.g., Coach, Inc.*, 2012 U.S. Dist. LEXIS 7341, at *3 (awarding statutory damages in amount of $100,000 per counterfeit mark, rather than Plaintiff's requested $500,000); *Purzel Video GmbH v. Martinez*, No. 4:13-CV-1668 (CEJ), 2014 U.S. Dist. LEXIS 46720, at *3 (E.D. Mo. Apr. 4, 2014) (finding request for $150,000 statutory damages, representing $30,000 per willful copyright infringement under 17 U.S.C. § 504(c), "excessive" and awarding total of $30,000 in statutory damages instead).

Upon review of the record, including Plaintiff's proposed injunction and order,

**IT IS HEREBY ORDERED** that Plaintiff's motion for entry of default judgment is **GRANTED**. (Doc. No. 18.)

**IT IS FURTHER ORDERED** that Plaintiff is entitled to recover statutory damages in the sum of $150,000.

**IT IS FURTHER ORDERED** that a Permanent Injunction is entered in this case as follows:

Defendant is immediately and permanently **ENJOINED** from:

a. using Plaintiff's FURminator marks, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiff's FURminator marks, in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of any pet grooming products;

b. processing, packaging, importing, or transporting any product that is not a genuine product of Plaintiff bearing any of Plaintiff's FURminator marks, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiff's FURminator marks;

c. using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendant is associated with Plaintiff or that any product imported, manufactured, distributed, or sold by the

Defendant is in any manner associated or connected with Plaintiff, or is authorized, licensed, sponsored, or otherwise approved by Plaintiff;

      d.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (c) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiff's FURminator marks.

      A separate judgment of default shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of July, 2014.